**KUTV, INC., Petitioner,**

v.

**Honorable Dean E. CONDER, District Judge, and John Preston Creer, Respondents.**

**No. 17822.**

Supreme Court of Utah.

Aug. 7, 1981.

Alan L. Sullivan, Patrick A. Shea, Salt Lake City, for petitioner.

Ted Cannon, Gordon L. Roberts, Gifford W. Price, Mark O. Van Wagoner, Salt Lake City, for respondents.

HALL, Chief Justice:

This is an original proceeding brought on behalf of KUTV, Inc.,[1] seeking an extraordinary writ directing the trial court to vacate its order barring the public from the hearing on respondent John Preston Creer's motion for a preliminary injunction.

Respondent Creer (hereinafter "Creer") is an object of a criminal investigation of several months' duration conducted by the Salt Lake County Attorney, Ted L. Cannon (hereinafter "Cannon"). In furtherance of his investigation, Cannon sought and obtained an order of the district court which afforded him the right to subpoena witnesses and require production of docu-

---

1. Since joined by Kearns-Tribune Corporation, Deseret News Publishing Company, Bonneville International Corporation, and Ted L. Cannon, as Amici Curiae, with leave of this Court.

ments.[2] That order required "such proceeding be kept secret and the testimony and items obtained be kept secret until further order of this Court," and was dated October 29, 1980.

The proceedings before this Court arose out of a civil action filed by Creer against Cannon in June, 1981, alleging, among other things, that Cannon has violated the secrecy order above referred to, and has violated the Code of Professional Responsibility through inappropriate disclosures to the news media and others not connected with the criminal investigation in progress. The ultimate relief sought by Creer is the recusal of Cannon and his staff from the subject investigation and the appointment of an attorney pro tempore to further conduct the investigation. In furtherance of his objective, Creer sought and obtained a temporary restraining order enjoining Cannon from further investigation and from filing criminal charges. The temporary restraining order reads in pertinent part as follows:

NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1. Defendant, Ted Cannon, individually and in his capacity as Salt Lake County Attorney and all attorneys, agents, employees and others in active concert therewith are hereby restrained and enjoined as follows:

(a) from proceeding further with the investigation entitled In The Matter of the Criminal Investigation of Alleged Illegal Political Funds of Utah Power & Light and John Preston Creer, Case No. CS–80–80 and the filing of any charges arising therefrom until an evidentiary hearing on the merits of plaintiff's Complaint is held or until expiration of this Order;

(b) from further violating the Secrecy Orders of this Court relating to the above-referenced investigation and from further violating Disciplinary Rule 7–107 of the Revised Rules of Professional Conduct of the Utah State Bar.

An application for an Extraordinary Writ vacating that order was filed by Cannon and subsequently denied by this Court (No. 17785, filed June 15, 1981). The civil action then proceeded to an evidentiary hearing before the Honorable Dean E. Conder on Creer's motion for a preliminary injunction. When it came to the attention of Judge Conder that certain of the evidence, if permitted to be introduced, would violate the secrecy order of October 29, 1980, he closed the proceedings to the public. When the hearing resumed, it is alleged that "Mr. Cannon, over Mr. Creer's objections, was successful in introducing into evidence certain information gained during the course of his criminal investigation." Therefore, Creer now contends that the hearing will unavoidably result in further breach of the Mini-Grand Jury Act (hereinafter "Act"),[3] and the prior court order requiring confidentiality of the material obtained by Cannon in the discovery process.

■ The fundamental fairness which is inherent in our system of criminal justice requires prosecutors to try their cases in the courtroom; thus it is wholly inappropriate to make public damaging allegations against a putative defendant during the discovery process. The Act has simply codified that elementary principle of criminal justice.

The stated purposes of the secrecy provisions of the Act are to protect the innocent and also to prevent criminal suspects from having access to investigative information

2. As allowed by U.C.A., 1953, 77–22–1, et seq., sometimes referred to as the "Mini-Grand Jury Act." Section 1 of the Act reads as follows:

It is declared, as a matter of legislative determination, that it is necessary to grant subpoena powers in aid of criminal investigations and to provide a method of *keeping information gained from investigations secret both to protect the innocent and to prevent*

*criminal suspects from having access to information prior to prosecution* and to clarify the power of the attorney general and county attorneys to grant immunity from prosecution to witnesses whose testimony is essential to the proper conduct of a criminal investigation or prosecution. [Emphasis added.]

3. *Supra*, footnote 2.

prior to prosecution. The Act thus serves highly important dual purposes.

■ The secrecy provisions of the Act are analogous to the provisions which pertain to formal grand jury proceedings as also authorized by statute,[4] and substantial support for maintaining the confidentiality of this aspect of the judicial process is found in both Utah and federal case law.[5] We therefore conclude that the trial judge did not err in preserving the integrity of the prior secrecy order and the confidentiality required by the Act "to protect the innocent and to prevent criminal suspects from having access to information prior to prosecution."

■ Turning now to the challenge made to the propriety of the order closing the hearing, it is initially to be observed that judicial proceedings should, as a general proposition, be open to the public and the news media. Particularly is this so when the subject matter of the proceedings constitutes a challenge to the conduct of an elected public official. In applying that general principle to the facts of this case, it is also to be observed that the purpose of the hearing below, as defined by counsel for Creer, is "to review the extrajudicial statements made by Mr. Cannon to the media and to others; and to determine whether, in fairness, it may be said that he has breached those orders . . ." (of secrecy). The basic contention is that "[t]here will be evidence of statements made by his office or other display of evidence gained through investigatory process that is outside—considerably outside of what has been reported so far to the media."

■ The trial judge interpreted the foregoing statements as indicative of the fact that matters of secrecy, *not heretofore disclosed,* would and could be elicited at the hearing and therefore closed the hearing. However, under the terms of the secrecy order, and by virtue of the policy provisions of the Act itself, *neither* of the parties is at liberty to introduce into evidence any secret information gained by Cannon's discovery efforts which has not heretofore been disclosed. The same holds true whether the hearing is closed to the public and news media or not, since as pointed out *supra,* the secrecy provisions of the Act not only require the protection of the innocent but also prevent criminal suspects from having access to information prior to prosecution. Because the information obtained by Cannon pursuant to the order of secrecy may not be divulged or elicited by the parties, no valid reason remains to infringe upon the general rule that court proceedings be open to the public. The order closing the hearing is therefore vacated and set aside.

In remanding this matter for further proceedings, we point out that Creer may be permitted to introduce into evidence that portion of the information obtained through Cannon's investigation which may have heretofore been disclosed to the news media, *or others,* since that information is no longer "secret" for the purposes of this proceeding and no purpose is to be served by preventing further disclosure thereof. We also suggest that in the interest of preserving the prior secrecy order, the trial judge may deem it appropriate to establish, in advance of the resumption of proceedings, the identity of *all* witnesses that parties intend to call, and possibly require a proffer of what their testimony will be. This could be followed by the admonition of the court to counsel, parties and witnesses that the secrecy matters not heretofore disclosed, not be divulged during the hearing, under the penalty of contempt.

The petition is granted, and our previous stay of all proceedings in this matter re-

---

4. See U.C.A., 1953, 77–10–1, *et seq.,* and U.C.A., 1953, 77–11–1, *et seq.,* and specifically, 77–10–8 and 77–11–10.

5. See *State v. Harries,* 118 Utah 260, 221 P.2d 605 (1950); *State v. Faux,* 9 Utah 2d 350, 345 P.2d 186 (1959); *Granato v. Salt Lake County Grand Jury,* Utah, 557 P.2d 750 (1976); *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Yaselli v. Goff,* 12 F.2d 396 (2 Cir. 1926); *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *Zemel v. Rusk,* 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965); *Douglas Oil Company v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979).

mains in full force and effect until such time as the Honorable Dean E. Conder again assumes jurisdiction in this matter.[6] No costs awarded.

STEWART, HOWE and OAKS, JJ., concur.

BALLIF, District Judge: (concurring with comments).

I concur in the foregoing opinion resolving the question of public access to the hearings in this matter, and in narrowing their scope to alleged past disclosures that may have violated the order of secrecy entered by the district court. The following remarks deal with what I perceive to be procedural problems which may arise as this matter goes forward—assuming that they have not surfaced already and been resolved by the trial court.[1]

As authorized by the Mini-Grand Jury Act,[2] the district court entered an order of secrecy in a criminal investigation directed against Creer by Cannon.[3] Creer then filed a civil proceeding alleging that Cannon had violated that order, and that at the time of the entry of the temporary restraining order he (Creer) was in the process of presenting his proof *inter alia* to the district court in support of that allegation to obtain a preliminary injunction.[4] Creer has not, however, chosen to ask the court to find Cannon guilty of contempt for allegedly violating the court's secrecy order, which the district court is clearly empowered to do,[5] but instead has alleged not only a secrecy-order violation but also a violation of Disciplinary Rule 7–107 of the Utah State Bar,[6] and that Cannon has engaged in a "pattern of prosecutorial abuse and misconduct," [7] which Creer seeks to prove with the stated aim of bringing about recusal of Cannon as unfit to continue this investigation.[8]

It is my opinion that the proceedings thus far and as hereinafter restricted by the majority opinion should be construed as a contempt proceeding whose aim is to protect the district court's secrecy order by means of that court's power to punish as contempt any violation of its orders.[9] That, however, would appear to me to be the extent of the district court's power over Cannon should it determine that he has in fact violated the order.

If the proceeding is not restricted to this narrow issue, the relief sought by Creer could lead the district court into a judicial inquiry into the fitness of the County At-

6. Notwithstanding the assumption of Judge Ballif as set forth in his concurring opinion, this Court makes no attempt to define or limit the issues that may be presented, but leaves that matter to the discretion of the trial court, consistent with the pleadings.

1. This Court has not had before it a complete record of the proceedings in the district court. Both this proceeding and the one filed by Cannon on June 15, 1981, to vacate the temporary restraining order were petitions to this Court for an extraordinary writ. The trial court record containing the pleadings in this case were not part of the pleadings here and we have no knowledge of what preliminary motions and their dispositions may have been before that court—such as motions to dismiss, for summary judgment, or to strike, etc.

2. U.C.A., 1953, 77–22–1, *et seq.*

3. The initial order of the district court signed by Judge Homer Wilkinson on October 29, 1980, required secrecy of proceedings, as well as the testimony and items obtained.

4. Rule 65A(e)(1), U.R.C.P., provides that a preliminary injunction may be granted "when it appears by the pleadings ... that a party *is entitled to the relief demanded*, and such relief, or any part thereof, consists in restraining the commission or continuance of some act complained of, either for a limited period or perpetually." (Emphasis added.)

5. U.C.A., 1953, 78–32–1.

6. Adopted May 28, 1936, and approved by the Supreme Court of the State of Utah, March 1, 1937.

7. As phrased in petitioner's brief.

8. *Id.* Also see majority opinion, p. 413.

9. *Supra*, footnote 2. See also, U.C.A., 1953, 78–32–10, which empowers the court on a finding of contempt to impose a fine not exceeding $200 and/or 30 days' imprisonment. Again, the record before this Court is not complete as to the proceedings in the district court. The matter may be proceeding as a contempt, or could be so amended at that level. See Rule 15, U.R.C.P.

torney to perform his statutory duties. There is no authority, constitutionally, by statute, or through inherent power of the court, for such a judicial proceeding.[10] Moreover, the court's responsibilities in the area of removing an elected official from office is set forth by statute [11] and is limited to adjudicating whether the alleged proscribed conduct has in fact occurred, and, if such is proved by *criminal* jury trial, then removal can be judicially ordered.[12]

Also, a violation of Disciplinary Rule 7–107, its proof and penalty, is the subject of procedures carefully laid out by this Court and the State Bar Association.[13] Nothing in those rules authorizes the district court to conduct inquiry into such violation or to impose disciplinary or punitive action based thereon.[14]

Care to confine any judicial process to its authorized area and to enforce orders issued within those bounds is essential to the proper functioning of the judicial system.

In summary, it appears to me that the main opinion, in preserving First Amend-

**10.** Article I, Section 11 of the Constitution of Utah provides that all persons have access to the courts for the redress of injury to their persons, property or reputations, and that no person be barred from prosecuting or defending before any tribunal of this state. In the case of *Brown v. Wightman*, 47 Utah 31, 151 P. 366 (1915), this Court held that the above constitutional provision does not create any new rights or remedies, but leaves that function to the Legislature, or as provided by the common law where not so changed. At p. 38 of the Utah Reports, 151 P. 366, after noting that 28 states have a similar constitutional provision, this Court said: "Where no right of action is given . . . or no remedy exists, under either the Common Law or some statute, those constitutional provisions create none."

The Common Law Writs have been abolished and replaced by Court rule, but the remedies they provided have been established by Rule 65B, U.R.C.P. Of these Extraordinary Writs, Rule 65B(a), (b)(1) provides that where no other "plain, speedy and adequate remedy exists," relief may be granted as against one who unlawfully holds public office or does an act which by law works a forfeiture thereof. The condition of the Writ, however, is that there is no other "plain, speedy and adequate remedy." If, in the Creer action, removal from office were being sought, then there would be such an existing remedy (U.C.A., 1953, 77–6–1, *et seq.*; see also, *State v. Guerts*, 11 Utah 2d 345, 359 P.2d 12 (1961)). Such removal is not being sought, however, and no remedy for the type of recusal requested in the present proceedings has been established by legislative action.

**11.** The legislative authorization for the removal of public officials not subject to impeachment includes county attorneys (U.C.A., 1953, 77–6–1). Commencement of such proceedings is by a sworn written accusation, filed in the district court (U.C.A., 1953, 77–6–2), to which the defendant is ordered to appear and answer (U.C.A., 1953, 77–6–6 through 8). If the accusation is denied, the case proceeds the same as any civil proceeding.

It is noted that one of the offenses for which removal can be ordered is "malfeasance in office." This offense is not defined by statute, but in the *Guerts* case (*supra*) the Supreme Court upheld the statute against claims of ambiguity because "by usage the phrase 'malfeasance in office' has acquired a commonly understood meaning" (q.v. p. 348, 359 P.2d 12). If Creer proves his allegations, removal might be available unless the determination of malfeasance in office must be made in a *criminal* proceeding—which appears to be the case.

This is borne out by the case of *Obray v. Malmberg*, 26 Utah 2d 17, 484 P.2d 160 (1971), where this Court held that a civil action seeking money damages and removal from office of a sheriff for failure to properly investigate an alleged burglary was properly dismissed by the district court, "since such removal is based on legislation which plaintiff did not pursue." In answer to the claims of the plaintiff that the defendants' actions were tortious and actionable as such by the plaintiff, the Court said "that failure by a public sheriff (sic) to investigate a crime . . . ordinarily is a matter of judgment and discretion, not actionable or compensable, and not pursuable by an individual since the public official's duty is to the public,—he being accountable to and removable in a proper proceeding, by the public."

**12.** U.C.A., 1953, 77–7–13, provides that upon admitting the accusation or conviction and assigning the cause thereof, removal is to be ordered by the court.

**13.** *Rules of Discipline of the Utah State Bar*, as amended by the Supreme Court of Utah, October 11, 1979.

**14.** *Id.* See specifically Rule VII, which provides the penalties available to this Court in disciplining a violator, which include disbarment, suspension, temporary suspension, public and private reprimand, private admonition, costs and restitution.

ment rights and the integrity of the Mini-Grand Jury Act, has properly drawn limits to the proceedings that are to go forward in the district court—viz., to determine *only* whether Cannon has violated the secrecy order of the district court. If that question is decided affirmatively, the district court has the authority to punish him through its contempt powers. Whether it can properly do anything beyond that is a matter which I think must be carefully considered, and the district court's authority to take further action against him, as prayed for in the complaint, must be precisely identified and found to be authorized before it is pursued.